ON PETITION FOR REHEARING
ROBERTSON, Presiding Justice,
dissenting:
Being of the opinion that the Petition for Rehearing should be granted and the original opinion, reducing the jury verdict from $78,635 to $46,635, withdrawn, I respectfully dissent to the denial of the Petition for Rehearing.
In its Petition for Rehearing, St. Catherine Gravel Company cited to the Court for the first time Archer v. Board of Mississippi Levee Com’rs, 158 Miss. 57, 130 So. 55 (1930). In Archer, this Court said:
“It appears that the chief value of the property involved is the riparian rights of land in the river for procuring sand and gravel, and there was considerable evidence bearing upon the value of the said property, and there was proof of revenue derived from this source by the owner prior to the condemnation proceedings. The court, however, instructed the jury: ‘The court instructs the jury that in fixing the value of the land and property condemned you must not take into consideration any value of the gravel in the Mississippi River.’ Mrs. Archer’s title to the center or thread of the stream of the Mississippi river had been established by her in a suit for that purpose at a cost of $5,000 or more, and her riparian rights extended to the center of the stream. As the petition sought to condemn the riparian rights as well as the land lying outside of the river banks, and as the proof shows that gravel was a valuable part of the property within the rver channel, it is clear that the court was in error in so instructing the jury. The plaintiff was not only entitled, under the proceeding, to recover the value of the land outside of the river bed, but was entitled to recover for her riparian rights, which, as stated, included the right to take gravel and sand from the Mississippi river for commercial purposes. The proof shows that this was of considerable value. It is therefore necessary to reverse the judgment of the court below and remand the cause for a new trial.” 158 Miss. at 62, 130 So. at 56. (Emphasis added).
*234 Besides taking 3.08 acres of land fronting on St. Catherine Creek and a permanent drainage easement over 1.23 acres of land, the Commission is taking away the landowner’s riparian rights to the middle of the Creek, just as the Board of Levee Commissioners was doing in Archer and just as in Archer the Commission is taking away the landowner’s right to take gravel to the middle of the Creek.
It bears repeating that in Archer this Court said:
“The plaintiff was not only entitled, under the proceeding, to recover the value of the land outside of the river bed, but was entitled to recover for her riparian rights, which, as stated, included the right to take gravel and sand from the Mississippi river for commercial purposes. The proof shows that this was of considerable value.” 158 Miss. at 62, 130 So. at 56. (Emphasis added).
The Commission, in its application for a special court of eminent domain, requested the court to appoint a disinterested, knowledgeable person qualified to make an appraisal of the property under the quick-take statute [Mississippi Code Annotated section 11 — 27—83 (1979 Supp.)]. David Blough, an appraiser of Natchez, Mississippi, was appointed, and in his detailed appraisal he used the income or capitalization approach to appraise the loss of the gravel bar and the riparian rights to mine gravel. The value of the gravel bar and the permanent drainage easement over 1.23 acres was set at $40,687. His total appraisal was $60,500. The court thereupon entered its order that the Commission could take immediate possession of the lands being condemned upon payment of not less than 85% of the compensation and damages, as determined by the court-appointed appraiser. The Commission thus was required to pay into court at least $51,425.
The undisputed proof was that for 50 years the Gravel Company had harvested gravel from St. Catherine Creek. The last three years before the take (1976, 1977 and 1978) the proof was that the annual net income from the annual harvesting of gravel was $3,458.
The Commission’s witnesses, Herbert Miller, project engineer, and William B. Milton, appraiser, admitted that the annual mining of gravel from St. Catherine Creek had been going on for almost 50 years, that it was a valuable property right, that the depositing of gravel on the inside bend of the Creek on the Company’s land had been a certainty for 50 years, but that, when the Commission condemned and took the land and the riparian rights and straightened the channel of the Creek, the gravel would no longer be deposited on the company’s land adjacent to the Company’s main plant (including the gravel washing and processing facilities).
At the trial it was just a question of the value to be placed on these riparian rights, not that the right to mine gravel had no value at all, as this Court in its majority opinion has decided.
The Commissioner’s appraiser, Milton, valued the taking away of the landowner’s right to mine gravel at $5,495. Laurence O’Ferrall, one of the property owner’s appraisers, testified that using the capitalization method, the approved appraisal method usually used where there is an annual income (in this case $3,500), the damages to the property owner for the taking away of its riparian rights to mine gravel would be $35,000. His appraisal for the total take and damages was $75,500.
Robert Haltom, the landowner’s other appraiser, also used the capitalization method to determine damages for the loss of the right to mine gravel. He was of the opinion that the loss of this right would be $32,000, and that the total take and damages would be $78,635.
The jury heard all of the evidence and personally viewed the property. Without objection from the Commission, the court instructed the jury:
The Court instructs the jury for the Defendant that if you believe by a preponderance of the creditable evidence that the Defendant, St. Catherine Gravel Company, has mined sand and gravel in *235 the past and if you further believe by the preponderance of the creditable evidence that St. Catherine Gravel Company, Defendant, could mine sand and gravel in the future based on past activity and if you further believe by the preponderance of the creditable evidence that the Defendant will not be able to mine said gravel in the future because of the taking of the property and easement by the Petitioner, State Highway Commission of Mississippi, then you may include in your verdict of damages the value of said source of gravel as of the date of the filing of the Petition.
After weighing the evidence and considering the court’s instructions, the jury returned this verdict:
“We the Jury vote unanimously (sic) to award the Defendants $78,635.00.”
In spite of the undisputed testimony that the riparian rights and the consequent right to mine gravel to the center of St. Catherine Creek were valuable property rights variously valued from a low of $5,495 (Commission’s appraiser Milton) to a high of $35,000 (Company’s appraiser O’Ferrall), this Court, in the majority opinion, says:
“[I]t is our opinion that the separate and special claim for damages on account of the sand and gravel is based upon too weak, uncertain, and speculative testimony and an award therefor must not be allowed to stand. We, accordingly, reverse the allowance of these damages as alleged due compensation in the amount of $32,000 and affirm the remainder of • the award.”
My thought is that this ground of reversal is not even before the Court. The Commission made no objection to the defendant’s instruction that the jury could take into consideration the value of the “source of gravel”. Also, in the Commission’s motion for a new trial, although assigning five grounds, the Commission no where complained of the instruction given that the jury could take into consideration loss of the gravel bar and loss of the right to mine gravel to the center of St. Catherine Creek. No where did the Commission complain that the property owner was not entitled to some damages for the loss of riparian rights to mine gravel. This Court thus, in taking away every penny that the jury awarded for the loss of riparian rights, the actual loss of the gravel bar itself, and the loss of income from the annual harvest of gravel, goes further than the Commission itself asked for. This Court is taking away even what the Commission’s appraiser said would be due for the loss of gravel. The Commission’s appraiser, William B. Milton, valued the gravel bar and right to mine gravel at $5,495.
This Court reduced the jury verdict from $78,635 to $46,635, the exact amount testified to as the value of the land alone. So now the landowner must refund to the Commission $4,790 (the difference between $51,425 paid under the quick-take statute and $46,635, the amount found due by this Court). The refusal to give any value to the loss of riparian rights to me flies in the teeth of Archer and also Section 17 of the Constitution of the State of Mississippi, which solemnly provides:
“Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; . . . ”
I am of the opinion that the jury was correctly instructed, that the verdict of the jury is supported by substantial evidence, that this Court should not substitute its judgment for that of the jury as to the value of the land and riparian rights taken, and that this Court shoulu affirm the jury’s verdict for $78,635.
I, therefore, respectfully dissent.
PATTERSON, C. J., and BOWLING, J., join in this dissent.